# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RALPH RAY TENNANT, JR.,**

    **Plaintiff,**

v.                                                                             **Civil Action No. 5:11cv49**
                                                                                     **(Judge Stamp)**

**JIM RUBENSTEIN,**
**WILLIAM M. FOX,**
**TONY LEMASTERS**
**and KAREN TOWNSEND,**

    **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

The *pro se* plaintiff filed a civil complaint against the above named defendants on March 3, 2011. The undersigned granted him in forma pauperis status on March 30, 2011. In the complaint, the plaintiff alleges that he was unfairly discharged from his position in the prison library along with other inmates. The plaintiff alleges that of the inmates discharged, he and one other inmate were the only inmates prevented from seeking institutional work for sixty (60) days. The plaintiff further alleges that only two of the inmates discharged from the library at the time he was discharged were reinstated. Because he was not reinstated, the plaintiff claims he was discriminated against in violation of his right to equal protection. The plaintiff also alleges that his grievances pertaining to his discharge were denied in violation of his constitutional rights. The plaintiff seeks back pay in the amount of $56 per month beginning in February 2011 until the matter is resolved, punitive damages, and any other fair and appropriate amount determined by the Court.

## I. Standards of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## II. Analysis

### A. Defendants Rubenstein and Fox

Liability under 42 U.S.C. §1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994);

---

[1] *Id.* at 327.

Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

In this case, the only allegations against defendants Rubenstein and Fox are that they violated the plaintiff's constitutional rights by affirming and denying his grievances in this matter. However, the plaintiff has no constitutional right to participate in a grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994). Because the plaintiff has no cognizable right to the grievance procedure, the defendants could not have violated his constitutional rights by denying his grievances in this matter. Further, the act of denying administrative grievances is not the type of personal involvement required to state a claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003).

Moreover, no where in the plaintiff's filings does he indicate that he is suing any of the defendants in either their official or individual capacity. The United States Supreme Court has held that state officials sued in their official capacities do not constitute "persons" within the language of 42 U.S.C. § 1983. Will v. Michigan. 491, U.S. 58 (1989). The Court considered a suit against a state official in his or her official capacity the equivalent of a suit against the state itself. Id. at 65. The Court concluded that, absent any congressional intent to override states' immunity, the eleventh amendment bars § 1983 suits against state employees in their official capacity. See id. at 56-57. Therefore, to the extent that the plaintiff is seeking to sue Rubenstein and Fox in their official capacity, the same does not state a claim under § 1983.

Conversely, a suit against an official in his individual capacity does not seek payment from the state treasury, but from the personal funds of the individual, and therefore is not a suit against the state or the state office that the individual occupies, and the individual is not protected by the

holding of Will. See Pontarelli v. Stone, 930 F.2d 104. 113 n. 17 (1st Cir. 1991).

Accordingly, this court must analyze whether the complaint alleges that Rubenstein and Fox acted either outside the scope of their respective offices or, if within the scope, acted in an arbitrary manner grossly abusing the lawful powers of their offices. Scheuer v. Rhodes, 416 U.S. 232, 235 (1974). Further, the "court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." In re Allen, 106 F.3d 582 (4th Cir. 1997). An official acts beyond the scope of his official duties "only if the injury occurred during the performance of an act *clearly* established to be outside of the limits of that authority." *Id.* (emphasis added).

Defendant Rubenstein is the Commissioner of the DOC, and defendant Fox is the Warden of SMCC. Hearing and ruling on grievances through administrative process are not *clearly* established to be outside the scope of their official discretionary duties. Rubenstein and Fox acted within the scope of their respective offices as Commissioner of the DOC and Warden of SMCC when they denied the plaintiff's grievances. Furthermore, the plaintiff has presented nothing to suggest that they acted in an arbitrary manner which grossly abused the lawful powers of their office. Therefore, the plaintiff's complaint against Rubenstein and Fox for denying his grievances in this matter is clearly a complaint against them only in their official capacity and is barred by § 1983.

## B. **Defendant LeMasters**

In his complaint, the plaintiff alleges that defendant LeMasters violated his constitutional rights and discriminated against him when the defendant allowed his administrative assistant, defendant Karen Townsend, to terminate the plaintiff's employment in the library and to prevent the plaintiff from seeking other institutional work for sixty (60) days. [Dckt. 1, p. 4]

1. Due Process

Such that the plaintiff alleges a due process violation for the deprivation of employment during incarceration, the plaintiff fails to state a claim. Due process requires that no person be deprived of "life, liberty, or property, without due process of law." U.S. Const. amend. V and XIV, §1. Before it can be determined that the due process clause was violated, it must be determined that a liberty interest was at stake. Sandin v. Connor, 515 U.S. 472 (1995). It is well-established that a prisoner has no cognizable liberty interest in institutional employment. Quinn v. Cunningham, 879 F.Supp. 25, 27 (E.D. Pa. 1995). Because the plaintiff has no liberty interest in prison employment, he necessarily fails to state a claim.

2. Supervisory Liability

As to supervisory capacity, there is no *respondeat superior* liability under § 1983. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, supra. Therefore, even if Plaintiff had a liberty interest which was violated, defendant LeMasters as Townsend's supervisor is not liable for her acts because there is no allegation he was personally involved in the alleged wrongdoing.

However, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). A supervisor also may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional

injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[2]

First, because a prisoner has no liberty interest in any prison work assignment, defendant Townsend's conduct could not have posed a 'pervasive and unreasonable risk' of constitutional injury to the plaintiff. Next, the plaintiff alleges no facts that defendant LeMaster's had actual or constructive knowledge about defendant Townsend's conduct much less that defendant LeMaster's responded inadequately. Finally, no causal link between defendant LeMaster's and the alleged constitutional injury can be shown because the plaintiff has no constitutional interest in any prison work assignment.

In this instance, the plaintiff fails to make any allegations which reveal the presence of the required elements for supervisory liability. Consequently, the plaintiff fails to state a claim against defendant Lemasters.

## C. **Defendant Townsend**

The plaintiff asserts that defendant Townsend violated his constitutional rights by treating him unfairly and by discriminating against him during and following the course of his employment with the prison library under the defendant's supervision. The plaintiff claims that defendant

---

[2] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

Townsend: (1) terminated his employment without justification, (2) prevented him from seeking other work for sixty (60) days, and (3) rehired two other inmates who also were terminated at the same time and for the same reason as the plaintiff.

1. Due Process

To the extent plaintiff alleges a due process violation for the deprivation of employment during incarceration, the plaintiff fails to state a claim. Due process requires that no person be deprived of "life, liberty, or property, without due process of law." U.S. Const. amend. V and XIV, §1. Before it can be determined that the due process clause was violated, it must be determined that a liberty interest was at stake. Sandin v. Connor, 515 U.S. 472 (1995). It is well-established that a prisoner has no cognizable liberty interest in institutional employment. Quinn v. Cunningham, 879 F.Supp. 25, 27 (E.D. Pa. 1995). Because the plaintiff has no liberty interest in prison employment, he necessarily fails to state a claim against Townsend for termination and prevention of employment and hiring others instead of hiring him. Sandin v. Connor, *supra;* Quinn v. Cunningham, *supra.*

2. Equal Protection

The equal protection clause protects prisoners from arbitrary discrimination. See Turner v. Safley, 482 U.S. 78, 84 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."). Moreover, "[a]lthough the special conditions of the prison setting license a degree of discrimination that would not be tolerated in a free environment, there is no general right of prison officials to discriminate against prisoners on grounds of race, sex, religion, and so forth." Crawford v. Indiana Dep't of Corr., 115 F.3d 481, 486 (7th Cir. 1997). To state a claim of unequal treatment under the Equal Protection Clause of the Fourteenth Amendment, the plaintiff "must first demonstrate that he has been treated differently from others with whom he is

similarly situated and that the unequal treatment was the result of intentional of purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). "Conclusory allegations of discrimination . . . not supported by any reference to particular acts, practices, or policies" are insufficient to state a claim of discrimination under § 1983. United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979).

Here, the plaintiff merely makes conclusory allegations of discrimination against the defendant. In addition, he does not even assert a basis for the alleged discrimination, *i.e,* race, religion, sex. At best, the plaintiff merely establishes that defendant Townsend chose to punish him for what he claims are her unfounded concerns regarding "the suspicious nature of [his] reporting activities to her on behalf of all the other inmate workers..." (Dckt. 1-9, p.3). Therefore, the plaintiff's allegations do not meet the requirements for an equal protection claim because he has made no allegations that he was treated differently as a result of "intentional and purposeful discrimination." Thus, the plaintiff fails to state a claim that his equal protection rights were violated.

### III. Recommendation

For the reasons stated, the undersigned recommends that the plaintiff's complaint be **DISMISSED** as frivolous.

Within **fourteen (14) days** after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk, written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of

the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: July 20, 2011.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE